Good morning, Your Honors. May it please the Court. My name is Anna Benvenu. I'm appearing on behalf of Appellant Jerrid Allen. Where Congress delegates to the consulate the discretion to issue a visa, the Doctrine of Consular Non-Reviewability bars judicial review, with a narrow exception as articulated by the Supreme Court in Mandel and its progeny. On the other hand, where the Congress, where the Court has not, this Court has not applied the Doctrine of Consular Non-Reviewability, where there has been no such delegation of discretion by Congress to the consular officers. And while this Court has faithfully applied the Doctrine of Consular Non-Reviewability in that delegation, this Court has exercised judicial review where there are plenary power concerns and political question concerns are not at play. And so in Wong v. Department of State in 1986, this Court reviewed an APA action in which the State Department and the consulate had revoked a visa, and the Court considered whether the consular officer had properly revoked the visa. Then in 1997, in Patel v. Reno, this Court reviewed the consulate's decision to hold a visa proceeding in abeyance and expressly found that the Doctrine of Consular Non-Reviewability did not bar the claim because that decision of the consulate was not a decision, quote, within the consulate's discretion. In Patel, this Court expressly stated that that would not be the only exception to the Doctrine of Consular Non-Reviewability. Now, in Li Hong, Li Hing of Hong Kong, which is also 1986, we distinguished Wong and suggested that the rule of consular non-reviewability did apply and that there were a number of grounds to distinguish Wong. How do you deal with that, with that case? It's, I mean, there are interesting grounds of distinction. The first was that it's a revocation. It's not, the Court, this Court in Li Hing didn't explain why there's a discernible difference between a revocation and some other decision. But it did distinguish that, and Li Hing was the refusal to grant the visa in the first place, which is your situation, and it did say that Wong was applied to a revocation. That's correct, Your Honor. And I do know that that decision exists. I just don't, there is no tangible difference between a consulate issuing a revocation and a consulate issuing. If you're correct, then it suggests that we have a conflict in our cases, which this panel can't resolve, and we would have to take it en banc. Obviously, this has now been around for 31 years, and we didn't think in this case that there was a conflict between the two cases, so. Yeah. I actually don't think there's a conflict. I, what I'm saying is I don't think there is a discernible difference between revocations, so that's one point. I also think that a main difference here in this case is this is a situation where Congress did not delegate the authority to the consular officer. And what tells us that Congress didn't delegate it? Because Congress is, Congress passes the INA, and it, in effect, it requires the Secretary of State consular officers to apply the INA. And there are certain provisions of admissibility in the INA that have no discretion, and this is one of them, the basis for the denial of discretion. What language are we looking for to confer discretion? So, in this case, you're looking for, well, you're looking, you can look at this case, there are two grounds of inadmissibility based on convictions. And this court in Olivas-Monta has held that where the language in convicted of in the INA and the language convicted of a crime involving moral turpitude and convicted of a controlled substances offense imply or unambiguously require application of the categorical approach. That's not a discretionary delegation. There is no discretion in the application of the categorical approach. And so you know, looking at the. And we're to apply the categorical. And the language that you're looking for is the language has reason to believe. Is that the language? Sure. Except the reason to believe ground is reason to believe you're a controlled substances trafficker. The ground applied in Ms. Allen's case was that you were convicted of a controlled substance offense. There's no reason to believe language in the ground of inadmissibility applied by the consular. There is in 1201G, which is an overlay to all of this. Sure. That's correct. But there's no ambiguity in Congress's law. So your position is that with respect to the CIMT language, that we are to apply the categorical approach to our latest thinking on CIMT? Well. And that we're supposed to do this with respect to German law? Yeah. And this Court has done that before. I mean, the Court in Olivas-Matas said that the categorical approach applies to crimes involving moral turpitude. So we know that that's the case. And this Court in previous cases has applied the categorical approach to foreign convictions. It's done. In a consular denial of a visa case? No. But in other cases. Those are cases involving an enhanced sentence, right? Sure. Those are criminal proceedings under U.S. law when we're going to have a sentence enhancement based on a conviction someplace else. So I understand why we would apply it there. But why would we just simply pluck up our CIMT or controlled substance categorical fit and apply it to German law in a case for consular reviewability? Well, because Congress didn't delegate the authority to the Secretary of State and its consulates to discretionarily apply. When the categorical approach is applied, it's being applied by a whole bunch of lawyers and a bunch of judges. When we would apply the way that you're asking us to apply is that it would require a consular officer who's perhaps not an attorney to understand the latest thinking on CIMT by the Ninth Circuit, if that's where they might bring it, as opposed to any other circuit, right? There's no reason why, in fact, a consular officer in Germany doing this would have no clue whose CIMT law they were supposed to apply, would they? I'm not asking you to do that, though. But Congress asked the consulates to do it. I'm questioning whether Congress would ask such a thing that seems so impossible to do, because an officer in Germany denying a visa has no idea what the venue might be in the United States. And that leads to their relatives, then, to cherry pick, you know, who's got the most favorable, for example, CIMT language going, you know, going this week. Well, in this case, there's no cherry picking. Mr. Allen, you know, is a United States citizen who was residing in California, so.  But the consular officer might not know that he was therefore responsible for applying Ninth Circuit law to that decision. Perhaps. But the thing is, Congress passed the INA, passed that convicted-of language, passed the convicted-of-a-crime-involving moral turpitude language. It can't possibly be that Congress was like, yeah, these consular officers that have no idea what they're doing should be applying the law, and if they get it wrong, oh, well, no biggie. We don't care if our delegation and our law is properly applied. That can't possibly be what this Court is saying, that when Congress passed the INA and did not. Do you have any case in which we have reviewed this kind of a denial? Well, Your Honor, in the cases that I've cited in Patel v. Reno and Singh v. Clinton. Well, Patel is just an injunction to decide the matter. It doesn't say anything about the substance. Correct. So Patel just doesn't move me at all, I'll have to tell you. Except, Your Honor, that both in Patel v. Reno and Singh v. Clinton, this Court looked at consular decisions, looked at the regulations governing those decisions, and applied those regulations. And they looked at whether it was a proper termination or revocation, and that's what I'm asking this Court to do, is to actually to say, look at the law that Congress passed. Congress. Do you have any authority from any other jurisdiction that would apply this? Well, I don't. I do think that this Court's jurisprudence around the doctrine of consular nonreviewability, it's all based in these plenary power concerns. It's all based in this idea that the discretion, when Congress gives Secretary of State discretion, that that's when the doctrine applies. Okay. Is there any authority from any other jurisdiction that's contrary to your current position? Well, Your Honor, in Bruno v. That would be surveyed with Bruno. Yes, that's correct. It's the D.C. Circuit's case. So in order for us to do this, if we didn't think that Patel and Singh were binding on this Court and that we were free to decide this in the first instance, we would need to go into conflict with Saavedra Bruno. Yeah. But Saavedra Bruno was wrongfully decided for a number of reasons. And one of the first things is the text of the Administrative Procedures Act, like this presumption of review under the APA, and Congress's expressed decision not to review it. And the Secretary of State from those agencies? What do you do with Artestani? I'm sorry. What, Your Honor? In Artestani, the Supreme Court's decision in 1991, it said that the APA does not apply to the INA, to INA proceedings. Now, that was a — that was not a judicial — that was not the judicial review  of the APA. The APA does not displace the INA. Right. And I'm not asking the Court to define that the APA displaces the INA. What I'm saying is that the APA, when Congress passed the APA, could have expressly exempted the decisions of the State Department and consulate, but it didn't. Well, what the Court said in Artestani was that deportation proceedings are not governed by the APA. Right. But these aren't deportation proceedings, right? And so — Right. These are even — these are even worse. In deportation proceedings, we're at least talking about people who are inside the United States. Right. But this is an APA action, and there's a presumption for APA review, and there's a presumption — Right. But if the INA governs deportation proceedings and the INA and the APA does not apply to deportation proceedings, those are people inside the United States who acquired due process rights by virtue of their presence here, how could we then conclude that the APA gives greater protection to people who are outside the United States than it does to people who are inside the United States? Well, it's just the — it's the wrong view of the inquiry. Mr. Allen is a United States citizen, and he's here inside the United States, a U.S. Army member, trying to bring his wife here. And he is the person aggrieved by agency action. He's the person who is bringing the claim. He's saying, I'm adversely affected because you've misapplied the law. If he had a constitutional claim here, that would have to be brought under Kleindienst v. Mandel? Yeah, but that's different. And here he's bringing an APA action. There's no dispute that he's adversely affected. Well, an APA action doesn't tell us whether it's constitutional or statutory. You're claiming it's just a statutory claim? It's an — this is an APA action. Well, an APA action can — the APA — Section 706 provides for constitutional — for constitutional adjudication in APA actions. So to say it's an APA action doesn't help solve the question. He's not bringing a Mandel constitutional claim. Okay. Now, if he can only bring a constitutional action under Mandel, how is it that he can bring a statutory action under the APA? Doesn't that then mean that — that any U.S. relative can challenge any decision by a consular? No. That seems to cut against consular non-reviewability. Not at all, Your Honor. It doesn't mean that at all. There's — there's — the APA would allow a challenge in a case like this where Congress has not delegated discretion to the Secretary of State and two consular officers to render a decision. And there are certain admissibility grounds that have inherent discretion, and there are others that do not. So is your argument, Counselor, then — then limited to 1182A2 grounds alone? Well, the 1182 grounds, and very specifically even the ones that imply questions of law only. Okay. So where — where there's questions of discretionary application, where Congress gave the Secretary of State discretion. And the discretion language would be knows or has reason to believe? Is that the language that would confer discretion? Well, or, like, there are other grounds that imply discretion as well that don't necessarily use that language. So you'd have to go to the language at issue in each admissibility ground. But we know for sure that convicted of language from this Court's case in Olivas-Mata, but also just from — just a natural reading of it, it's that convicted of language doesn't imply discretion. You either were or were not convicted of a crime involving moral turpitude or a crime involving a controlled substance. And it can't possibly be that Congress didn't care that the application of law happened just because it was being done by consular. What if the language said any alien convicted of committing acts which a consular office knows or has reason to believe constitute the essential elements of CIMT? It would be different if Congress had written discretion into the act. Is that the discretionary language you're looking for? If that's what it said, there would certainly be an argument that Congress delegated discretion, but that's just not what it says. Congress didn't delegate discretions in pure question of law. And it can't be that the Secretary of State can just willy-nilly apply Congress's law. They don't have the authority to not apply the law. If Congress wanted them to give the — wanted to give them the authority to not apply the law, it would have said, you can deny on any basis, forget the INA. If you don't want to grant a visa, just don't grant it. But that's not what it did. And when Congress gave people just like Mr. Allen the APA action and didn't exempt the decisions of consulates, it left this window open for this very narrow exception to the doctrine of consular nonreviewability. It doesn't apply to every admissibility ground. It doesn't apply to every decision. But it does apply where a consular officer doesn't apply the law and where Congress didn't delegate that discretion. I'd like to reserve the rest of my time, if you don't mind. Thank you, counsel. Thank you so much. Let's hear from the government. Good morning. May it please the Court. My name is Audrey Hemesath. I'm an assistant U.S. attorney in the Eastern District of California. There is no exception to the doctrine of consular nonreviewability that would apply in this case. The statute that Ms. Benvenu was referring to that gives consular officers the authority to refuse visas is 8 U.S.C. 1201A. A consular officer may issue an immigrant visa or a nonimmigrant visa, and then the language is subject to the limitations prescribed in this chapter or regulations issued thereunder. The limitation that applies in this case is 8 U.S.C. 1182A.2A, and then 1 is the crime involving moral turpitude and 2 is the controlled substance offense. What Ms. Benvenu points out, and I think correctly, is that there's other language in 1182 that has this language the consular officer knows or has reason to believe, and that language is missing from 1182A.2. It is, but the language in 1182A is, except as otherwise provided in this chapter, aliens who are inadmissible under the following paragraphs are ineligible to receive visas, and it is the crimes of conviction that create the grounds of inadmissibility. Right, but if this were just straight up, I mean, we could make a judicial determination. I don't see anything in that language in 1182A that you've cited that confers such discretion on the consular officers that it might ordinarily prevent judicial review of that. It's right, correct. It's not discretionary. The consular officer is looking at the criminal convictions and applying the law that Congress has written. It's not necessary that there be a discretionary component to this to trigger the doctrine of consular nonreviewability, which, as Your Honor has pointed out, has already been decided by the circuit and by the Supreme Court. So there isn't any window. The only exception, which was actually the issue in the district court, is where the constitutional right, assuming a constitutional right of the United States citizen's spouse petitioning on behalf of the foreign applicant, argues that there is not a facially legitimate and modified reason for the refusal. But that's now been abandoned in this case. Doesn't the doctrine of consular nonreviewability rest in part on this notion that what the folks in the consulates are doing is exercising discretion in areas in which they have special expertise trying to assess whether somebody is a security threat or a risk or the other issues they look at? And this particular issue here, trying to figure out if somebody has committed a crime of moral turpitude or a drug offense, doesn't seem to fall within their special purview and is something that we do all the time. What we don't do is exercise discretion to figure out if somebody is a security risk, so you can understand why you wouldn't want the Federal courts sticking their nose in there. But here, why should we be concerned about creating a narrow exception, having Federal judges do what they do all the time, which is make these categorical assessments? And the answer to that question, Your Honor, is that Congress has not created a right of judicial review. And without that hook, not 1331 and not the APA are going to create subject matter jurisdiction for the district courts or this court to look at what the consular office is doing. Speaking of judicial review, though, you agree with the outcome of the discussion between Judge Bybee and Mr. Benvenu that, one, whether or not, you know, there's APA review in a consular proceeding has not been decided by the Ninth Circuit either way. Do you agree with that, first of all? I think that's the outcome of that. I agree that in a published case you won't see the words APA or Administrative Procedure Act and consular nonreviewability. So there's no direct precedent. But I forgot the name, but there's a D.C. case that's in your favor, right? Right? Correct. Okay. So in that sense, whether or not there's judicial review, I think, is an open question, isn't it, in our circuit? No, no, no. Under the APA? Because the kind of question Judge Lightman asked is the kind of question that would to me seem amenable to review under the APA. It would be if Congress had provided a statute that said there is judicial review over this. But there's a long line of Ninth Circuit and based on Supreme Court cases that say exactly this. When someone overseas has been refused a visa, there is no judicial review over them. But there's no case that applies that to an APA type of proceeding, is there? Correct. The cases don't discuss the APA, but they discuss the basic idea of whether there's jurisdiction. No, but when I say whether or not, even whether or not they discuss specifically the APA, it's not the kind of proceeding, say, that involves a determination of a question of law that really doesn't, you know, impinge upon consular discretion at all. They all address the idea of whether the applicant is eligible for a visa. Some of those decisions are discretionary. Some of them are not. And the cases are Li-Hing, Loza Bedoya, Ventura-Escamilla. And all of them, they don't make any distinction between whether what the consular officer is doing is within the discretion of the consular officer or eligibility. What do we do with Singh v. Clinton? It's our 2010 decision. So the issue in that case was whether the State Department could terminate an immigrant visa registration. Consular non-reviewability didn't appear to be an issue in that case, and it was about the level of notice that was required by the statute. In contrast here, what we have is an actual decision by a particular consular officer in an individual's case. This is the heart of the doctrine of consular non-reviewability. The other cases cited by Ms. Benvenu, Patel, Wong, those are cases involving visas that are peripheral, though, to what has already been decided at the heart of the doctrine of consular non-reviewability in this circuit's own precedence. So there is no way around Li-Hing v. Hong Kong. There is no way around Ventura-Escamilla. Those cases have already laid the groundwork that even if the consular officer were to have made a mistake, and a mistake implies something that's not discretion but an error of fact or of law, there still would not be any jurisdiction to review the determination of that consular officer. And that is because there has been no statute provided by Congress, no avenue of judicial review. Roberts Which case is the strongest one in which this Court or any other has precluded review under the APA of a pure question of law like the one presented here, where the statute, the underlying statute that was being applied by the consular officer was not one that involved discretion? What's the strongest case there that is just like this? The strongest case that discusses the APA is Saavedra-Bruno. That's the D.C. Circuit case. The strongest case in this circuit, I would say, on the specific point of whether or not it's an alleged error versus an alleged abuse of discretion by the consular officer, is Losa Bedoya. But in Saavedra-Bruno, if I'm not mistaken, the statute that the consular officer acted under was one that had the reason to believe language under it. Isn't that an important distinction? And doesn't that mean that if we were to go the way that the appellant wants us to go here, we wouldn't necessarily be in conflict, because that case involved an underlying statute that conferred discretion on the consular officer? It's a distinction without a difference, because the end result is still there is no – there's nothing giving this Court subject matter jurisdiction. That's the big-picture holding of all the cases that are on the doctrine of consular non-representation. Well, I mean, you have to deal with the APA, because the APA does create a cause of action in 702. So how do you – how is it that the APA is not applicable? That's what Saavedra-Bruno answers. It has an answer for that question. But I think we can say, well, you don't – there's nothing giving the Court jurisdiction. That's just simply not correct. There is a cause of action created in the APA. Now, I think the government has to tell us why the APA doesn't apply. The answer may be Saavedra-Bruno, but you have to give us an answer. Well, the APA is not a jurisdiction-conferring statute, right? No, but 1331 will take care of that. So 1331, same problem. There's still nothing in the INA or any other statute that confers jurisdiction upon the courts to review this. But ordinarily, we're not looking affirmatively for things to give us jurisdiction if we've got something like 1331. I mean, that's true of review of all kinds of agency actions. So why are consular decisions different from actions by, let's say, the EPA? I want to disagree a little bit with what Your Honor just said about 1331, and that's actually addressed also in Saavedra-Bruno. So the same problem that exists with the APA exists with 1331 there, and that is that there's nothing in the INA that gives this right of access. But Saavedra-Bruno, again, addresses this by saying that the presumption in immigration matters is going to be flipped. And part of that has to do with separation of powers and this development of this doctrine of nonreviewability. And so the INA is going to be different. Actions under the INA are going to be treated differently from any other agency actions. Is that the government's position? That would rest on Saavedra-Bruno, but I just want to know whether that's the government's position today. Right. It's not just the government's position. That's what all the cases that discuss the doctrine of consular nonreviewability say. Well, there are very few of them that actually deal with this problem in this kind of detail. Saavedra-Bruno really is the only one that's ever gotten to that level of granularity. It's the one that discusses the APA, correct. But the idea is the same. In all of these cases, the overseas applicant is attempting to get review of whatever the consular officer did, be it discretionary, be it a mistake, be it a mistake of law or fact. What the applicant cites hasn't ever mattered in a case. They can make it a declaratory judgment action. They can make it a mandamus case. They can make it a 1331 case. They can try to make it an APA case. But there's a unanimous body of cases across all circuits and based on what the Supreme Court has said about the delegation to Congress, from Congress to the consular officer, that's the problem. That predates the INA. Nothing in the INA changed that. And that's what Saavedra-Bruno recognizes is the dilemma that the plaintiffs have in this case. There's nothing further I'll submit. No further questions. Thank you. Thank you, Your Honor. Ms. Vivendu, you have some time remaining, I believe. A couple of things about Bruno. The first is that this Court already parts with Bruno. Bruno itself was a revocation case. It was a visa revocation. We already know that this Court has found that it could hear an APA action in a revocation context. And we have cases that is the Singh-Patel line of cases about revocation termination. But Patel was an order to a consular officer to render a decision. Sure. One way or another. And that's a little bit different from saying I get to challenge the decision once you've made it. I apologize, Your Honor. Sorry, I meant Wong was a revocation. I apologize. And Singh v. Clinton was a termination. And the revocation action that's already been reviewed by this case, Saavedra Bruno rejects. And so we already have a split in terms of what this circuit says can be reviewed in an APA action in a visa proceeding. Yeah. Of course, your distinction, your citing of Wong I think is, you know, I think is a very good point, except that we have already distinguished Wong. Sure. But this Court goes on revocations and Bruno doesn't. So there's already a split in the circuits in that regard. Secondly, this the government here concedes that these grounds are not discretionary. There's no debate that these grounds are not discretionary. Bruno was a discretionary ground. So in Bruno, Congress had delegated the authority to the Secretary of State in that discretionary reason-to-believe context. Congress has not done that same delegation. Okay. But why isn't 1201G an answer to that? Why isn't that say that no visa, and it's a very general provision, the consular officer shall not issue a visa if he knows or has reason to believe, and that's your discretionary language, that the alien will not be admissible on any of the grounds described in, for example, 1182? That would — that is — this is a blanket discretionary grant that would cover everything in 1182, including 1182a2. It's just that with these pure questions of law, that seems to be — that seems to be contrary to Congress's intent. Well, how could it be contrary to Congress's intent if that's what Congress wrote? Yeah. Well, Your Honor — 1201G doesn't contradict anything in 1182. No. It does provide a blanket discretion in consular officers to deny if they have reason to believe that one of the grounds in 1182, including 1182a2, has been crossed. Right. But that reason to believe is about gathering the information, the factual bases. Well, if you're going to dismiss the reason to believe language as not conferring discretion, then I don't understand the limits of your argument, because I think that's the only language you can point to in the other sections of 1182 other than a2 that confer discretion on the attorney general or consular officers. Yeah. It's just that when Congress wrote the INA and said convicted of and used that convicted of language, those are questions of law. This Court has repeatedly held that those are questions of law. But if one has reason to believe that somebody has been convicted of a crime involving moral turpitude, that would be the discretion that is conferred in other sections of the INA that you seem to have conceded are discretionary. Just it doesn't make sense that you would have reason to believe a conviction. Like a conviction is or it isn't. It isn't a reason to believe type analysis the same way that, like, gang affiliation or terrorism affiliation are the kind of things you would have a reason to believe for. So in addition to that, with this idea that this Court and all the other courts frequently do this question of law analysis, that in the narrow situation where there's only a question of law and where a consular officer, as Your Honor has recognized, doesn't necessarily have that expertise, you leave a person like Mr. Allen, who's served this country and wants to bring his wife and children to be with him, no avenue where there's a misapplication of law and where Congress has not delegated the Secretary of State to just apply whatever rules it wants. There's language in the cases, and I think it's probably in Saavedra Bruno in a long footnote, that suggests that in the past, where these things were denied, rather than getting judicial review of them, that they were always taken to the consulates to see if the German consulate could work it out with the American consulate. Have you taken any efforts to, through the German consulate, to try to resolve this question? No. And, you know, theoretically, he could keep reapplying and keep making arguments and keep going back, but if — But why wouldn't she go to the German consulate and say, can you work this out with the Americans to explain why our family ought to be reunited in the United States? Well, that does provide some avenue of relief. If this Court, if there's no APA, if this Court doesn't find that Mr. Allen is aggrieved and the consulate doesn't change its position — Sure. You could have taken this on parallel paths. Sure. I'm asking you, have they done anything with the consulate? Not as far as I know, Your Honor. All right. And essentially, I mean, the main point here is that the consular officers here are usurping Congress's power by not faithfully applying the law, and the APA allows Mr. Allen to say, look, this is a clear question of law. The law hasn't been applied. Congress asked the consulates to apply the law.  Okay. Thank you so much. We thank both counsel for the argument in a difficult case. The last case on the oral argument calendar is Shahad v. Carey.
judges: Tashima, Bybee, Leitman